SUMMONS ISSUED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK      CV 13-5341

--------------------------------------------------------------------- x

JOAN MORRIS, MARK MORRIS AND SHANE MORRIS,

                                                        Plaintiffs,

                    -against-

CITY OF NEW YORK, POLICE OFFICER ANTOINE BERT, POLICE OFFICER ILIANA FELIZ, POLICE "JOHN" WALTER, POLICE OFFICER "JANE" SMITH,

                                                        Defendants.

COMPLAINT AND JURY DEMAND

Docket No.

ECF CASE    DEARIE, J.

SCANLON, M.J.

--------------------------------------------------------------------- x

Plaintiffs JOAN MORRIS, MARK MORRIS AND SHANE MORRIS by their attorneys, Stoll, Glickman & Bellina, LLP, for their complaint allege as follows:

PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiffs seek relief through 42 U.S.C. §1983 for the violation of their Fourth and Fourteenth Amendment rights in addition to violations of the laws and Constitution of the State of New York.

2. The claim arises from a September 29, 2012 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, illegally broke into plaintiffs' house, pushed over Mark Morris, who is paralyzed and wheelchair bound, and arrested Shane Morris without probable cause. The District Attorney's office declined to prosecute Shane Morris and he was released after spending approximately 24 hours in the system. Mark Morris was brought by an ambulance to Kings County Hospital Center and treated for back pain and wheezing.

1

3. Plaintiffs seek monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

6. The amount in controversy exceeds $75,000.00 excluding interest and costs.

## VENUE

7. Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

8. Plaintiff Joan Morris is the owner of 595 Warwick Street, Brooklyn, NY 11207. She resided at all times here relevant in Kings County, City and State of New York.

9. Plaintiff Shane Morris resides with his mother, Joan Morris, in 595 Warwick Street, Brooklyn, NY 11207. He resided at all times here relevant in Kings County, City and State of New York.

10. Plaintiff Mark Morris resides with his mother, Joan Morris, in 595 Warwick Street, Brooklyn, NY 11207. Mark Morris is a paraplegic, wheel-chair bound, and has a history of asthma. He resided at all times here relevant in Kings County, City and State of

New York.

11. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

12. Police Officer Bert was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Bert was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Bert was under the command of the 75th precinct on the date of the incident. On information and belief, at all times relevant hereto, Defendant Bert was under the command of the 75th precinct and is sued in his individual capacity.

13. Police Officer Iliana Feliz was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Iliana Feliz was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of her fellow officers when she observed them arresting

plaintiff without probable cause. Upon information and belief, defendant Iliana Feliz was under the command of the 75th precinct on the date of the incident. On information and belief, at all times relevant hereto, Defendant Iliana Feliz was under the command of the 75th precinct and is sued in her individual capacity.

14. Police Officer Smith was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Smith was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of her fellow officers when she observed them arresting plaintiff without probable cause. Upon information and belief, defendant Smith was under the command of the 75th precinct on the date of the incident. On information and belief, at all times relevant hereto, Defendant Smith was under the command of the 75th precinct and is sued in her individual capacity.

15. Police Officer Walter was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Walter was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Walter was under the command of the 75th precinct on the date of the incident. On information and belief, at all times relevant hereto, Defendant Walter was under the command of the 75th precinct and is sued in his individual capacity.

16. At all times here mentioned defendants were acting under color of state law, to

4

wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

17. Within 90 days of the events giving rise to these claims, plaintiffs filed written notices of claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

18. On September 29, 2012, at approximately 2:00 a.m., Mark and Shane Morris were hanging out at home with friends.

19. Both brothers reside with their mother, Joan Morris, at 595 Warwick Street, Brooklyn, New York, a house that Joan Morris owns with her husband. Joan Morris was asleep on the couch when the incident began.

20. Shane and his friends were hanging out just outside the house on the entrance ramp, which is a handicap entrance for Mark. Mark has been paraplegic and wheel-chair bound since 2011.

21. As Shane and his friends started to re-enter his home, a female voice yelled to him "hey boy".

22. Shane continued to follow his friends inside his house and locked the first and second entrance doors behind him.

23. Mark and his friends were hanging out in the hallway as Shane and his friends entered from outside.

24. Immediately after Shane and his friends entered, loud banging on the doors

began and Officer Bert broke the doors down and entered with his gun drawn.

25. Defendants rushed in and flipped over Mark's wheelchair, which was parked with the brake on, and Mark fell to the ground.

26. One of the officers who entered the hallway said, "I will shoot everybody in here".

27. A total of three officers entered the hallway.

28. Police Officer Bert grabbed Shane Morris by the collar and neck and dragged him to the bottom of the ramp outside.

29. Police Officer Smith grabbed his arms and helped Bert drag Shane out.

30. At the bottom of the ramp, there is a gate. Bert pushed Shane Morris over the gate and told him to "put his hands behind his back".

31. Mark Morris went to the emergency room at Kings County Medical Center and was treated for back pain and asthma.

32. Shane Morris was released from Central Booking after approximately 24 hours in custody after the Kings County District Attorney declined to prosecute him.

33. Plaintiffs reported this incident to the Civilian Complaint Review Board and were interviewed by an investigator.

34. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiffs' rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiffs.

35. During all of the events above described, defendants acted maliciously and with intent to injure plaintiffs.

## DAMAGES

36. As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

   a. Violation of their rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

   b. Violation of their rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

   c. Violation of their New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

   d. Violation of their New York State Constitutional rights under Article 1, Section 6 to due process;

   e. Physical pain and suffering;

   f. Emotional trauma and suffering, including fear, embarrassment, humiliation, harassment, emotional distress, frustration, extreme inconvenience, anxiety;

   g. damage to property;

   h. and loss of liberty.

## FIRST CAUSE OF ACTION
42 U.S.C. § 1983
Unreasonable Search and Seizure
(Against Officer Defendants)

37. The above paragraphs are here incorporated by reference.

38. The officer defendants wrongfully and illegally entered plaintiffs' residence, and illegally arrested, detained and imprisoned plaintiff Shane Morris.

39. The wrongful, unjustifiable, and unlawful entry, destruction of property, apprehensions, arrests, detentions, and imprisonment of plaintiffs were carried out without a valid warrant, without plaintiffs' consent, and without probable cause or reasonable suspicion.

40. At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiffs.

41. Throughout this period, plaintiffs were unlawfully, wrongfully, and unjustifiably held under arrest, deprived of their liberty, imprisoned and falsely charged.

42. At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiffs were without basis and without probable cause or reasonable suspicion.

43. All of this occurred without any illegal conduct by plaintiffs.

44. The District Attorney's Office declined prosecution.

45. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiffs of their constitutional rights secured by the United States Constitution.

46. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

## SECOND CAUSE OF ACTION
New York State Constitution Article I §12
False Arrest and False Imprisonment
(Against All Defendants)

47. The above paragraphs are here incorporated by reference.

48. The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiffs.

49. The wrongful, unjustifiable, and unlawful apprehensions, arrests, detentions, and imprisonment of plaintiffs were carried out without a valid warrant, without plaintiffs' consent, and without probable cause or reasonable suspicion.

50. At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiffs.

51. Throughout this period, plaintiffs were unlawfully, wrongfully, and unjustifiably held under arrest, deprived of their liberty, imprisoned and falsely charged.

52. At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiffs were without basis and without probable cause or reasonable suspicion.

53. All of this occurred without any illegal conduct by plaintiffs.

54. The District Attorney's Office declined prosecution.

55. Defendants, their officers, agents, servants and employees, were responsible for plaintiffs' arrests, detentions and imprisonments during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

56. Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of plaintiffs' rights, privileges, welfare, and well-being and are guilty of egregious and gross misconduct towards

9

plaintiffs.

57. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiffs of their constitutional rights secured by the Constitution of the State of New York.

58. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

### THIRD CAUSE OF ACTION
False Arrest and False Imprisonment
(Against All Defendants)

59. The above paragraphs are here incorporated by reference.

60. Defendants subjected plaintiffs to false arrest, false imprisonment, and deprivation of liberty without probable cause.

61. Defendants intended to confine plaintiffs, plaintiffs were conscious of their confinement and did not consent to their confinement.

62. The District Attorney's Office declined prosecution.

63. Defendants, their officers, agents, servants and employees, were responsible for plaintiffs' arrests, detentions and imprisonments during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

64. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

### FOURTH CAUSE OF ACTION
42 U.S.C. §1983
Excessive Force
(Against Officer Defendants)

65. The above paragraphs are here incorporated by reference.

66. By using excessive force against plaintiffs, and failing to intervene on behalf of one another's unlawful and unconstitutional conduct, defendants deprived plaintiffs of their rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by the Fourth Amendment to the United States Constitution.

67. In addition, the officer defendants conspired amongst themselves to deprive plaintiffs of their constitutional rights and took numerous steps in furtherance of such conspiracy, as set forth above.

68. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiffs of their constitutional rights secured by the United States Constitution.

69. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

### FIFTH CAUSE OF ACTION
New York State Constitution Art. I § 12
Excessive Force
(Against All Defendants)

70. The above paragraphs are here incorporated by reference.

71. By using excessive force against plaintiffs, and failing to intervene on behalf of one another's unlawful and unconstitutional conduct, defendants deprived plaintiffs of their rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by Article I Section 12 of the New York State Constitution.

72. In addition, the officer defendants conspired amongst themselves to deprive plaintiffs of their constitutional rights and took numerous steps in furtherance of such conspiracy, as set forth above.

73. Defendants, their officers, agents, servants and employees, were responsible for plaintiffs' arrests, detentions and imprisonments during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

74. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiffs of their constitutional rights secured by the New York State Constitution.

75. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

SIXTH CAUSE OF ACTION
Assault and Battery
(Against All Defendants)

76. The above paragraphs are here incorporated by reference.

77. Upon approaching, pushing, throwing plaintiffs to the ground, handcuffing and arresting plaintiff Shane Morris, defendants made plaintiffs fear for their physical well-being and safety and placed them in apprehension of immediate harmful and/or offensive touching.

78. Defendants engaged in and subjected plaintiffs to immediate harmful and/or offensive touching and battered them without their consent.

79. Defendants used excessive and unnecessary force with plaintiffs.

80. Defendants, their officers, agents, servants and employees, were responsible for plaintiffs' arrests, detentions and imprisonments during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

81. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

SEVENTH CAUSE OF ACTION
Negligence
(Against All Defendants)

82. The above paragraphs are here incorporated by reference.

83. Defendants owed a duty of care to plaintiffs.

84. Defendants breached their duty to plaintiffs by illegally entering plaintiffs' residence and pushing over Mark Morris in his wheel chair with force, causing him to fall and suffer injuries.

85. Defendants, their officers, agents, servants and employees, were responsible for plaintiffs' arrests, detentions and imprisonments during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the

doctrine of *respondeat superior.*

86. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

### EIGHTH CAUSE OF ACTION
Negligent Hiring & Retention
(Against City Defendant)

87. The above paragraphs are here incorporated by reference.

88. Upon information and belief, defendant City, through the NYPD, owed a duty of care to plaintiffs to prevent the physical and mental abuse sustained by plaintiffs.

89. Upon information and belief, defendant City, through the NYPD, owed a duty of care, to plaintiffs because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiff or those in a position similar to plaintiffs' as a result of this conduct.

90. Upon information and belief, defendant officers were incompetent and unfit for their positions.

91. Upon information and belief, defendant City knew or should have known through exercise of reasonable diligence that the officer defendants were potentially dangerous.

92. Upon information and belief, Defendant City's negligence in hiring and retaining the officer defendants proximately caused plaintiffs' injuries.

93. Upon information and belief, because of the defendant City's negligent hiring and retention of defendant officers, plaintiffs incurred damages described above.

### NINTH CAUSE OF ACTION
Trespass
(Against All Defendants)

94. All preceding paragraphs are here incorporated by reference.

95. Defendants voluntarily and intentionally entered upon plaintiff's real property without consent.

96. Defendants destroyed property belonging to plaintiff during the trespass.

97. Defendants have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive them of such rights and are liable to plaintiffs under New York State common law, 42 USC §1983 and the New York State Constitution.

98. As a result of the trespass, plaintiffs were damaged.

### TENTH CAUSE OF ACTION
Destruction of Property
(Against All Defendants)

99. All preceding paragraphs are here incorporated by reference.

100. Defendants voluntarily and intentionally interfered with plaintiff's possession of his personal property.

101. Defendants' interference with plaintiff's personal property caused damage.

### ELEVENTH CAUSE OF ACTION
MUNICIPAL AND SUPERVISORY LIABILITY
(Against Defendant City)

102. The above paragraphs are here incorporated by reference.

103. The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeat routine misconduct by the same officers, same units and same precincts. In 2010, New York City paid out $136 million[1] for the fiscal year,

---

[1] Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-

compared to 2009, when it paid out more than $117 million, and 2008, when it paid $80 million.[2] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[3] More than 40% of those settlements in 2011 stem from excessive force and false arrest.

104.    The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

105.    However, the City of New York has isolated NYPD officers from accountability for its civil rights lawsuits and, as a result, is preventing civil rights lawsuits from having

---

budget-grappling-new-scrutiny-millions-nypd-settlements/ and June 13, 2011, "With Budget Deadline Looming, City Lawsuits Come Under Scrutiny": http://www.wnyc.org/articles/wnyc-news/2011/jun/13/budget-deadline-looming-city-lawsuits-come-under-scrutiny/, last visited on July 7, 2011

[2] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

[3] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15, 2010 last available on December 9, 2010.

16

any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits. In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers. This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

106. The City has been aware for some time through Internal Affairs Bureau investigations that officers specifically at the 75th precinct have a documented history of illegal searches and false statements.[4]

107. The City is liable for the damages suffered by plaintiffs in that, after learning of their employees' violation of plaintiffs' constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

---

[4] "Criminal cases in jeopardy as NYPD cops probed in thefts, no-warrant drug raids", by Rocco Parascandola, et al, NY Daily News, available at: http://www.nydailynews.com/new-york/nypd-cops-probed-thefts-no-warrant-drug-raids-article-1.1405353 .

108. The aforesaid event underlying plaintiffs' factual allegations was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

109. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

110. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection

of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.)(Weinstein, J.).

111.     The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

112.     Plaintiffs have been damaged as a result of the deliberate indifference of the Defendant City.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, as follows:

  A.     In favor of plaintiffs in an amount to be determined by a jury for each of plaintiffs' causes of action;

  B.     Awarding plaintiffs punitive damages in an amount to be determined by a jury;

  C.     Awarding plaintiffs reasonable attorneys' fees, costs and disbursements of this action; and

  D.     Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Case 1:13-cv-05341-RJD-VMS   Document 1   Filed 09/26/13   Page 20 of 20 PageID #: 20

DATED:  September 24, 2013
        Brooklyn, New York

TO:

    City of New York
    100 Church Street
    New York, NY 10007

Respectfully yours,

*/s/ Cynthia Conti-Cook*

By: Cynthia Conti-Cook
Bar# CC0778
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Avenue, 3rd Floor
Brooklyn, NY 11217
(718) 852-3710
(718) 852-3586
cconti-cook@stollglickman.com